**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| BULAT MUKHAMEDSALIN, <br><br> Petitioner, <br><br> v. <br><br> TODD LYONS, et al., <br><br> Respondents. | Case No. 5:26-cv-03832-MBK <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Bulat Mukhamedsalin, a citizen of Russia, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Mukhamedsalin was paroled into the United States on July 3, 2023 while he seeks protection under the asylum laws. For the past three years, Mr. Mukhamedsalin has complied with his supervision conditions, obtained a work permit, and supported his wife, children, and grandchildren, all of whom live in the United States.

On July 6, 2026, Immigration and Customs Enforcement ("ICE) arrested him, several days after he was arrested for shoplifting. In this habeas action, Mr. Mukhamedsalin alleges that his detention violates his due process rights under the Fifth Amendment. For the reasons that follow, the Court

concludes that Petitioner's re-detention—without any pre-deprivation process —violates due process. Accordingly, the Court grants the Petition, orders Petitioner's immediate release, and prevent his re-detention absent notice and a hearing where the Government must show changed circumstances justifying his re-detention.

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner Bulat Mukhamedsalin, a native and citizen of Russia, entered the United States through the San Ysidro Port of Entry on July 3, 2023, after presenting himself to immigration authorities for inspection. Dkt. 1 at 2. DHS thereafter initiated removal proceedings by issuing a Notice to Appear charging him as inadmissible under INA § 212(a)(7)(A)(i)(I). *Id.* at 2, 62-65. DHS subsequently released Petitioner on parole while he seeks protection under the asylum laws. *Id.* at 2.

Following his release, Petitioner has attended his scheduled appointments with ICE and immigration court hearings, and was granted a work permit. *Id.* at 2-3, 7-9.  Petitioner's wife, four adult children, and grandchildren all reside in the United States. In a letter submitted in support of the Petition, Petitioner's wife describes him as the "foundation of our family": "He is not only our sole financial provider, but he is also our emotional support, our protector, and the person our entire family depends on every day." Dkt. 1 at 74. Petitioner's detention has caused financial and emotional turmoil for the family, including his grandchildren. *Id.*

Petitioner has had two interactions with the criminal justice system during his time in the United States. On November 22, 2023, Petitioner was arrested for "Aggravated Assault." Dkt. 8-1 at 3. Petitioner states that the arrest stemmed from his "intervention during a dispute involving a female tenant." Dkt. 9 at 2. No criminal charges were ultimately filed in connection

with the incident. *Id.* More recently, on July 3, 2026, Petitioner was arrested for misdemeanor shoplifting under California Penal Code § 459.5(a). *Id.* at 3. However, to date, no charges have been filed against him. *Id.*

On July 6, 2026, Petitioner appeared for his regularly scheduled ICE appointment. ICE agents arrested Petitioner and took him into custody. Dkt. 1 at 10. Petitioner was not provided with advance notice that DHS intended to revoke his release, a meaningful opportunity to context his detention before his liberty was taken away, a pre-deprivation hearing, an opportunity to present evidence demonstrating that continued release remained appropriate, or an individualized written explanation establishing why detention had suddenly become necessary after years of successful supervision. *Id.*

Petitioner filed the instant habeas Petition on July 10, 2026. Dkt. 1. He argues that his detention violates his due process rights under the Fifth Amendment and seeks immediate release from DHS custody. *Id.* at 18-55. On July 13, 2026, the Court issued General Order 26-05 and Briefing Schedule. Dkt. 5. Respondents filed their Answer on July 20, 2026. Dkt. 8. Respondents contend that Petitioner (1) has not demonstrated that the government lacked authority to detain him, (2) is subject to mandatory detention and ineligible for release pursuant to 8 U.S.C. § 1226(c)(1), because of his burglary arrest, and (3) is, at most, entitled to a bond hearing pursuant to *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), should his detention become prolonged. *Id.* at 2-5.

On July 23, 2026, Petitioner filed a Reply. Dkt. 9. Petitioner alleges that Respondent mischaracterized the July 3, 2026 incident and his criminal history. In support of his argument, Petitioner attached (1) his California Notice to Appear dated July 3, 2026, for a violation of California Penal Code § 459.5(a), a misdemeanor; (2) an e-mail from Petitioner's criminal counsel

confirming that the allegation against Petitioner is misdemeanor shoplifting; and (3) a Certificate from the Clerk of Los Angeles Superior Court showing that no cases have been opened against Petitioner. *Id.* at 10, 12, 14, 16.

On July 27, 2026, the Court issued an order authorizing Respondent to file a supplemental brief on or before July 28, 2026, to address Petitioner's factual claims regarding his criminal history. Dkt. 10. Respondent did not file a supplemental brief.

## II.   DISCUSSION

The Court begins by addressing Respondents' argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1), and then turns to Petitioner's argument that his re-detention violates due process.

### A. Respondent Has not Shown that Petitioner is Subject to Mandatory Detention

Section 1226(a) is "the default detention statute for noncitizens in removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Section 1226(c) "carves out a statutory category of aliens who may not be released under § 1226(a)," mandating detention for a noncitizen apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Id.* at 289. In January 2025, the LRA added a new category of persons subject to mandatory detention under §

1226(c): an individual who is "inadmissible" on certain grounds and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1226(c)(1)(E) (emphasis added).

Respondents argues that Petitioner "has open criminal cases for forced entry burglary and aggravated assault with a weapon" and that he is subject to 8 U.S.C. § 1226(c)(1) based on the burglary charge. Dkt. 8 at 2-4. However, Respondents fail to support these factual assertions. The only evidence that Respondents cite is Petitioner's Form I-213, which states that Petitioner has cases "pending" for a 2023 "Aggravated Assault" charge and a 2026 "Burglary – Forced Entry-Non-Residence." Dkt. 8-1 at 3. While the Ninth Circuit has "long held that 'information on an authenticated immigration form,'" including an I-213, "'is presumed to be reliable," that is only the case where there is no "evidence to the contrary presented by the alien." *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022) (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)).

Here, Petitioner has presented such contrary evidence. In his reply brief, Petitioner provides a certificate from the Clerk of the Los Angeles Superior Court indicating that no criminal cases have been filed against Petitioner. Dkt. 9 at 16. Petitioner also attaches a Notice to Appear indicating that he was arrested on July 3, 2026, for misdemeanor shoplifting under California Penal Code § 459.5(a). *Id.* at 12. Because Petitioner's evidence was inconsistent with Respondents' position that "has open criminal cases for forced entry burglary and aggravated assault with a weapon," (Dkt. 8 at 2-4),

the Court authorized Respondents to file a supplemental brief to address this inconsistency. Dkt. 10. Respondents declined to file a supplemental brief. The undisputed record therefore establishes that there is no pending case or charges against Petitioner for assault or shoplifting (or burglary). While Petitioner concedes he was arrested and issued a Notice to Appear ("NTA") for shoplifting, court records reflect that no charges have been filed. *See* Cal. Penal Code § 853.9(a)(1) (providing that an NTA properly filed with court "shall constitute a complaint").

Absent evidence that charges are pending against Petitioner, Respondents have not shown that Section 1226(c)(1) applies to Petitioner. The statute applies where a person "is charged with, is arrested for, [or] is convicted of . . . shoplifting." 8 U.S.C. § 1226(c)(1)(E). The statutes use of the present tense indicates that it is only to a person who presently "is arrested" for or "is charged" with shoplifting. "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992); *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) ("To ascertain a statute's temporal reach, this Court has frequently looked to Congress' choice of verb tense.") (cleaned up). For these reasons, courts have found that Section 1226(c)(1)(e) does not apply to individuals who were charged with a qualifying criminal offense in the past. *See Matute v. Jamison*, No. 2:25-cv-07093, 2026 WL 461557, at * 5 (E.D. Pa. Feb. 18, 2026) (citations omitted) (interpreting the LRA's use of the present to mean that it did not include one who was "arrested years ago, even if that arrest never manifested in indictment, because 'the present tense generally does not include the past.'") (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)); *Hairo v. Crawford*, No. 2:25-cv-704, 2026 WL 286176, at *2 (E.D. Va. Feb. 3, 2026) (relying on present tense construction to find that a petitioner was no longer covered by

the Laken Riley Act, once his criminal charges were dismissed); *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *5-6 (S.D. Iowa Sep. 30, 2025) (same); *Pereira v. Warden*, No. 1:26-cv-01480-DJC-JDP, 2026 WL 1272714, at *1, n.1 (E.D. Cal. May 8, 2026) (same).

This construction is supported by the structure of Section 1226(c)(1)(E), which tracks the progression of a criminal case from arrest, to charge, and finally to conviction. The structure reflects that Congress was concerned with people who the state has decided to prosecute—through a pending arrest or charges—or against whom the state has secured a conviction, rather than people who the state *might* decide to charge in the future. The construction also avoids rendering the term "is convicted" in the statute superfluous because every person convicted of a crime was first charged with it. *See Rueda Torres v. Francis,* No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025) (rejecting the respondents' "interpretation that requires mandatory detention following any arrest or charge no matter the ultimate disposition of those charges"; such a reading "would make the words 'is convicted of' superfluous, as no Defendant could possibly proceed to a conviction without first being charged") (cleaned up).

In sum, the Court concludes that Respondents have not shown that Petitioner is subject to mandatory detention under Section 1226(c).

**B. Petitioner's Re-Detention Violates Due Process**

The Court now turns to Petitioner's claim that his re-detention violates procedural due process.

Aside from arguing that Petitioner's detention is mandated by Section 1226(c), Respondents do not address Petitioner's procedural due process claim. Respondents' failure to oppose Petitioner's due process claim is a concession. *See Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D.

Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). In light of Respondents' non-opposition, the Court finds that Petitioner has shown that his re-detention violated procedural due process.

A "two-step analysis" applies to procedural due process claims. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, the Court must determine if Petitioner was deprived of a constitutionally protected interest. *Id.* Second, if such an interest exists, the Court then considers "whether that deprivation was accompanied by sufficient procedural protections." *Id.* To evaluate the adequacy of procedural protections, the Court applies the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976).

**1. Petitioner has a Constitutionally Protected Liberty Interest**

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604

8

U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Petitioner therefore has a constitutionally protected interest in freedom from incarceration. In addition, Petitioner has been living at large in the United States for the past three years, during which time he has developed significant ties in the United States. As discussed more fully below, Petitioner has a significant liberty interest in maintaining his settled life with his family outside of custody. As such, the Court concludes that Respondents deprived Petitioner of a constitutionally protected liberty interest when they re-detained him.

### 2. *Mathews* Balancing Test

Because Respondents deprived Petitioner of a protected liberty interest, the Court considers "whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

#### a. Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Petitioner has lived in the United States for approximately three years. During this time, he has lived with his wife and helped to support family, including his children and grandchildren.

While Petitioner has remained subject to supervision during this time,

"a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

While Petitioner has only resided in the United States for approximately three years, a person can develop meaningful ties in such a relatively short period of time. Even if Petitioner has "a lesser liberty interest" "at the margin" than other noncitizens released pending removal proceedings, "the same important interest is at stake—freedom from prolonged detention" and the potential loss of the important ties that Petitioner has developed in the United States. *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

For these reasons, numerous courts in this District and throughout the country—including the undersigned Magistrate Judge—have found noncitizens paroled into the United States, or released on conditional parole shortly after their entry into the United States, for comparable periods have a significant liberty interest in maintaining their freedom from confinement.

*See Lugos v. Mullin,* No. 5:26-cv-01880-KES, 2026 WL 1250264, at *5 (C.D. Cal. May 1, 2026) ("nearly two years"); *Medrano-Rocha v. Santacruz,* No. 2:26-cv-00404-KK-SSC, 2026 WL 411355, at *3 (C.D. Cal. Jan. 23, 2026) ("nearly three years"); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("approximately three years"). *See also Torres*, 2026 WL 145715, at *5 ("This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.") (collecting cases); *G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–10 (E.D. Cal. 2025) (same).

### b. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of [his] liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner's release reflects the Government's determination that Petitioner

did not present a sufficient danger or flight risk requiring his detention. *See* 8 C.F.R. § 212.5 (permitting release on parole under Section 1182(d)(5)(A) in limited circumstances, "provided the aliens present neither a security risk nor a risk of absconding")..

There is little reason to believe the Government's release decision was in error. During his time in the United States, Petitioner has maintained a stable residence and employment, has no criminal history, has proceeded with his immigration case, and reported for all his supervision check-ins and immigration court hearings. While Petitioner has twice been arrested, as discussed above, neither arrested has resulted in charges, much less a conviction. Notably, Respondents do not argue that Petitioner's arrests (or any other conduct) in the United States establishes that he is a danger or flight risk. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most

"minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

* * *

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process—namely, notice and a hearing—violated due process.

## III.   CONCLUSION

For the foregoing reasons, the Court ORDERS that: (1) Judgment be entered granting the Petition as to Petitioner; (2) a writ of habeas corpus be issued requiring Petitioner Bulat Mukhamedsalin's (A# 244-093-652) immediate release and prohibiting his re-detention absent a hearing at which the Government shows material changed circumstances justifying his detention; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: July 30, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

13